IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

EDUARDO HERNANDEZ, and )
JAIME CASTELLANOS )
 )
                Plaintiffs, )
 )
vs. ) Case No. 18-cv-0606-SMY
 )
DANIEL SULLIVAN, and )
ADJUSTMENT COMMITTEE )
EMPLOYEES )
 )
                Defendant. )

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiffs Eduardo Hernandez and Jaime Castellanos, inmates at Big Muddy River Correctional Center, filed a motion for a preliminary injunction on March 23, 2018. (Doc. 1). Plaintiffs seek release from segregation, where they were sent after engaging in a gesture that prison officials found to be a gang sign. (Doc. 1, pp. 1-2). Plaintiffs deny that the gesture was intended as a gang symbol, and allege that they were disciplined in retaliation for grievances they filed. (Doc. 1, pp. 3-4). This matter is before the Court on Plaintiffs' request for a Temporary Restraining Order ("TRO") as well as several housekeeping matters.

### Request for TRO

Plaintiffs have not filed a Complaint, which is problematic for reasons explained below. Instead, they seek the issuance of a temporary restraining order, which is an order issued without notice to the party to be enjoined that may last no more than fourteen days. (Doc. 1). A TRO may issue:

only if (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

FED. R. CIV. P. 65(b).

Without expressing any opinion on the merits of Plaintiffs' claims for relief, the Court concludes that a TRO should not issue in this matter.

Plaintiffs seek release from segregation, alleging that the discipline that landed them there was improper. Other than the segregation placement, they have make no allegation that they are being harmed in any way. As such, their allegations do not suggest a constitutional violation. *See Sandin v. Connor*, 515 U.S. 472, 485-86 (1995)(holding that segregation, standing alone, does not implicate the Constitution).

Plaintiffs justify their request by alleging that the prison grievance process takes a long time, and that they will not be timely released from segregation. But a slow administrative process is not grounds to issue a TRO. Plaintiffs cannot simply request a TRO, which is an extraordinary remedy, because they feel other remedies are not expedient. Rather, they must allege immediate and irreparable injury. Here, Plaintiffs' allegations do not set forth specific facts demonstrating the likelihood of immediate and irreparable harm *before Defendants can be heard*.

Moreover, federal courts must exercise equitable restraint when asked to take over the administration of a prison, something that is best left to correctional officials and their staff. *See Sandin v. Conner*, 515 U.S. 472, 482 (1995); *Rizzo v. Goode*, 423 U.S. 362, 379 (1976) (noting that where a plaintiff requests an award of remedial relief that would require a federal court to interfere with the administration of a state prison, "appropriate consideration must be given to

principles of federalism in determining the availability and scope of [such] relief."). For all of the above reasons, Plaintiffs' request for a temporary restraining order is **DENIED**. Their request for an injunction remains pending, but will be held in abeyance for reasons explained below.

### Sufficiency of the Filings

Plaintiffs' request for injunctive relief is improper in any event because they have not actually initiated a lawsuit. Because Plaintiffs are inmates, the Court must conduct a preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A before they can proceed on their claims. This is not possible, however, because Plaintiffs failed to file a Complaint. The Federal Rules of Civil Procedure provide that "[a] civil action is commenced by filing a complaint with the court." FED. R. CIV. P. 3. This is "the first step in the action." *Id.*, Advisory Committee Notes, 1937 Adoption. Plaintiffs' Injunction/TRO (Doc. 1) does not suffice as a Complaint because it does not contain a statement of the grounds for the Court's jurisdiction under Fed. R. Civ. P. 8.

Although *pro se* litigants are not held to the same standards that apply to licensed attorneys, *Kyle v. Patterson*, 196 F.3d 695, 697 (7th Cir. 1999), they are not entitled to general dispensation from the rules of civil procedure. *Jones v. Phipps*, 39 F.3d 158, 163 (7th Cir. 1994). The requirement that all plaintiffs must file a Complaint is a fundamental rule in our legal system. Without a Complaint, the Court cannot ascertain the basis for jurisdiction. *See Bell v. Hood*, 327 U.S. 678, 681-82 (1946); *Greater Chicago Combine & Ctr., Inc. v. City of Chicago*, 431 F.3d 1065, 1069-70 (7th Cir. 2005). Nor can the Court determine the exact causes of action that Plaintiffs intend to bring against the defendants. Plaintiffs are required to associate specific defendants with specific claims, so that defendants are put on notice of the claims brought

against them and so they can properly answer the complaint. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); FED. R. CIV. P. 8(a)(2).

By way of example, the case caption refers to Warden Daniel Sullivan and "Adjustment Committee Employees." (Doc. 1). Yet, none of the allegations in the motion suggest that Sullivan is personally involved in the conduct. Moreover, Plaintiffs refer to several individuals by name, but it is not clear whether those individuals are "Adjustment Committee Employees," or if Plaintiffs even intend to name them in the litigation. In the absence of a Complaint that identifies each defendant who is allegedly responsible for a violation of Plaintiffs' rights, and the conduct giving rise to each claim, the Court is unable to fully analyze Plaintiffs' claims or consider their request for a preliminary injunction.

While the Court takes Plaintiffs' allegations seriously, it cannot waive the requirements of the Federal Rules of Civil Procedure. Plaintiffs' Motion for Preliminary Injunction will be held in abeyance until such time as they file a proper Complaint. (Doc. 1).

## Group Litigation by Prisoners

In preparing a Complaint, Plaintiffs should bear in mind that multi-plaintiff litigation contains many pitfalls for the uninitiated. Plaintiffs may bring their claims jointly in a single lawsuit if they so desire, provided their Complaint ultimately meets the criteria for joinder in Fed. R. Civ. P. 20. However, the Court must admonish them as to the consequences of proceeding in this manner, including their filing fee obligations, and give them the opportunity to withdraw from the case or sever their claims into individual actions.

In *Boriboune v. Berge*, 391 F.3d 852 (7th Cir. 2004), the Seventh Circuit addressed the difficulties in administering group prisoner complaints. District courts are required to accept joint complaints filed by multiple prisoners *if* the criteria of permissive joinder under

Federal Rule of Civil Procedure 20 are satisfied. Rule 20 permits plaintiffs to join together in one lawsuit if they assert claims "arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to these persons will arise in the action." Nevertheless, a district court may turn to other civil rules to manage a multi-plaintiff case. If appropriate, claims may be severed pursuant to Rule 20(b), pretrial orders may be issued providing for a logical sequence of decisions pursuant to Rule 16, parties improperly joined may be dropped pursuant to Rule 21, and separate trials may be ordered pursuant to Rule 42(b). *Boriboune*, 391 F.3d at 854.

In reconciling the Prisoner Litigation Reform Act with Rule 20, the Seventh Circuit determined that joint litigation does not relieve any prisoner of the duties imposed upon him under the Act, including the duty to pay the full amount of the filing fees, either in installments or in full if the circumstances require it. *Id.* In other words, each prisoner in a joint action is required to pay a full civil filing fee, just as if he had filed the suit individually. The Court notes at this time that neither Plaintiff has paid the $400 filing fee, or moved to proceed IFP.

The Circuit noted that there are at least 2 other reasons a prisoner may wish to avoid group litigation. First, group litigation creates countervailing costs. Each submission to the Court must be served on every other plaintiff and the opposing parties pursuant to Federal Rule of Civil Procedure 5. This means that if there are 2 plaintiffs, the plaintiffs' postage and copying costs of filing motions, briefs or other papers in the case will be double what it would be if there was a single plaintiff. Plaintiffs are warned that the Court will not enter any orders directing prison officials to treat Plaintiffs differently because they have chosen to litigate together.

Second, a prisoner litigating on his own behalf takes the risk that "one or more of his

5

claims may be deemed sanctionable under Federal Rule of Civil Procedure 11." *Boriboune*, 391 F.3d at 854-55. According to the Seventh Circuit, a prisoner litigating jointly assumes those risks for all of the claims in the group complaint, whether or not they concern him personally. Furthermore, if the Court finds that the Complaint contains unrelated claims against unrelated defendants, those unrelated claims may be severed into one or more new cases. If that severance of claims occurs, each plaintiff will be liable for another full filing fee for each new case. Plaintiffs may wish to take into account this ruling in determining whether to assume the risks of group litigation in the federal courts of the Seventh Circuit.

Because not every prisoner is likely to be aware of the potential negative consequences of joining group litigation in federal courts, the Seventh Circuit suggested in *Boriboune* that district courts alert prisoners to the individual payment requirement, as well as the other risks prisoner pro se litigants face in joint pro se litigation, and "give them an opportunity to drop out." *Id.* at 856. As Plaintiffs have not filed a Complaint here, they have not yet committed to proceeding together. Prior to doing so, each Plaintiff should consider the following:

- He will be held legally responsible for knowing precisely what is being filed in the case on his behalf.

- He will be subject to sanctions under Federal Rule of Civil Procedure 11 if such sanctions are found warranted in any aspect of the case.

- He will incur a strike if the action is dismissed as frivolous or malicious or for failure to state a claim upon which relief may be granted.

- In screening the complaint, the Court will consider whether unrelated claims should be severed and, if it decides severance is appropriate, he will be required to prosecute his claims in a separate action and pay a separate filing fee for each new action.

- Whether the action is dismissed, severed, or allowed to proceed as a group complaint, he will be required to pay a full filing fee,

6

either in installments or in full, depending on whether he qualifies for indigent status under §§ 1915(b) or (g).

In addition, if the plaintiffs desire to continue this litigation as a group, any proposed amended complaint, motion, or other document filed on behalf of multiple plaintiffs must be signed by each of the plaintiffs. As long as the plaintiffs appear without counsel in this action, each plaintiff must sign all documents for himself. *See Lewis v. Lenc-Smith Mfg. Co.*, 784 F.2d 829, 831 (7th Cir. 1986); FED. R. CIV. P. 11.[1] A non-attorney cannot file or sign papers for another litigant. Plaintiffs are **WARNED** that future group motions or pleadings that do not comply with this requirement shall be stricken pursuant to Rule 11(a).

## Disposition

**IT IS FURTHER ORDERED** that on or before May 10, 2018, Plaintiffs shall file a complaint, thereby initiating this action, although Plaintiffs may choose to proceed in separate actions. Plaintiffs are reminded that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Plaintiffs are encouraged to use the Court's standard civil rights complaint form to prepare the pleading. They must clearly identify which claim(s) he is bringing against each defendant. In particular, the allegations should demonstrate which defendants are personally responsible for any claimed violation of his rights.

Plaintiffs may also choose to proceed separately by filing separate Complaints.

Plaintiffs are further reminded that they may not bring several unrelated claims against different defendants in the same complaint. Such unrelated claims are subject to severance into

---

[1] Rule 11 states, in pertinent part: "Every pleading, written motion, and other paper must be signed . . . by a party personally if the party is unrepresented." FED. R. CIV. P. 11(a). Moreover, a prisoner bringing a *pro se* action cannot represent a class of plaintiffs. *See Oxendine v. Williams*, 509 F.2d 1405, 1407 (4th Cir. 1975) (holding it would be plain error to permit imprisoned *pro se* litigant to represent his fellow inmates in a class action).

one or more separate actions, and Plaintiffs will be obligated to pay a separate filing fee for each action. *See George v. Smith*, 507 F.3d 605 (7th Cir. 2007) (unrelated claims against different defendants belong in separate lawsuits). If Plaintiffs wish to avoid severance and the associated filing fees, they should limit their complaint(s) to claims that are factually and legally related.

Plaintiffs are hereby **WARNED** that failure to file a proper complaint by the prescribed deadline will result in dismissal of this action for lack of subject matter jurisdiction. Such a dismissal shall count as one of their three individually allotted "strikes" under the provisions of 28 U.S.C. § 1915(g).

The Clerk is **DIRECTED** to mail Plaintiffs a standard Civil Rights Complaint form and instructions for a person in custody.

Finally, Plaintiffs are advised that they are under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in their addresses; the Court will not independently investigate their whereabouts. This shall be done in writing not later than seven (7) days after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: April 12, 2018**

s/ STACI M. YANDLE
**United States District Judge**